# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AXIOM PRODUCT ADMINISTRATION, LLC, <br>     Plaintiff, <br><br> vs. <br><br> DAN O'BRIEN, *et al.*, <br><br>     Defendants. | Case No. 4:20-cv-01333-MTS |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Dan O'Brien and Leslie Jaguande-O'Brien's Motion to Dismiss, Doc. [23]. The Motion is fully briefed and ready for adjudication. For the reasons stated herein, the Court will grant Defendants' Motion.

**I.    Background**[1]

Plaintiff Axiom Product Administration ("Axiom") provides nationwide finance and insurance ("F&I") products tailored toward automobiles. Axiom entered into a Dealer Capital Advance Agreement ("Agreement") with Defendant Dan O'Brien and the six Defendant limited liability company car dealerships he owns and operates. The Complaint alleges that Defendant Leslie Jaguande-O'Brien agreed to jointly secure the agreement with Defendant O'Brien, her spouse. Under the Agreement, Axiom would arrange a capital advance from lender Glenn Schmitt to Defendants so Defendants could purchase three car dealerships. Axiom also agreed to act as the processor of the payments from Schmitt to Defendants for the term of the capital advance.

---

[1] These facts are set forth solely for ruling on this Motion to Dismiss. They do not relieve any party of the burden of presenting evidence later in these proceedings.

In return, Defendants would make repayments via over-remit packs to Schmitt through Axiom until the capital advance was paid in full. The Agreement also provided that Axiom would be the exclusive provider of F&I products to Defendants until December 31, 2023 or two years following the date that the capital advance was fully repaid. The Agreement provided that Defendants would not:

> (i) Solicit, promote, sell or offer any F&I Products or Services that compete with the 'Warranties,' 'Products,' 'Programs,' or 'Contracts' offered under the Dealer Agreements (as those terms are defined in the Dealer Agreements); or (ii) enter into or participate in any discussion or negotiations with any Person or group of Persons other than [Axiom] and its affiliates regarding such products and services.

Doc. [4] ¶ 29. Under the Agreement, "Warranties," "Products," "Programs," or "Contracts" included theft protection, prepaid maintenance, road hazard protection, excess wear and tear protection, paint and fabric, and other ancillary products. *Id.* ¶ 30. Axiom alleges that Defendants breached their exclusivity obligations under the Agreement by "beginning to move their current F&I products and dealer services to other providers in competition with Axiom." *Id.* ¶ 36. Defendants' sales volume of Axiom's products, which averaged between 1299 and 2033 contracts per month, fell to zero. Axiom further alleges that Defendants revoked its digital access to their Dealer Management System that had previously allowed Axiom to view Defendants' new and preowned retail vehicles sales.

Under the terms of the Agreement, if Defendants breached the exclusivity obligations, Axiom would be entitled to "liquidated damages" in an amount equal to $75 for each vehicle retailed at seven specific dealer locations. *Id.* ¶ 32. Axiom further alleges that since the dealerships have failed to abide by the exclusivity obligations or remit the liquidated damages, Defendant O'Brien and Defendant Jaguande-O'Brien are in breach of a guaranty in Section

IV(C)(6) of the Agreement in which Axiom alleges Defendants O'Brien and Jaguande-O'Brien "guaranteed to secure the assets in the Agreement."

Axiom's action asserts four counts against Defendants. Counts I through III all allege breach of contract against all Defendants for breach of the Agreement, but each seeks a different remedy. *See* Doc. [4] (Count I, Breach of Contract-Injunctive Relief; Count II, Breach of Contract-Specific Performance; Count III, Breach of Contract-Monetary Relief). Count IV alleges a "Breach of Guaranty" against only the individual Defendants, Dan O'Brien and Leslie Jaguande-O'Brien. Defendants moved to dismiss Jaguande-O'Brien from the suit completely arguing that she was not a party to the Agreement.[2] Defendants further moved to dismiss Count IV against both O'Brien and Jaguande-O'Brien arguing that the Agreement does not include any guaranty, and, in any event, the Complaint contains no allegation of default on the capital advance purportedly guaranteed.

**II.     Standard**

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." If the plaintiff fails to do so, Rule 12(b)(6) allows a party to move to dismiss a purported claim if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556

---

[2] Plaintiff "confesse[d] the Motion to Dismiss" as it pertains to Jaguande-O'Brien and "consent[ed] to a dismissal with prejudice" since she was not "a signatory to the guaranty at issue." Doc. [26] at 1 n.1. Thus, the Court will dismiss Defendant Jaguande-O'Brien and focus herein only on Count IV's claim against Defendant O'Brien.

U.S. at 678). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). If a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

The Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package System, Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in favor of the nonmoving party, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78. Indeed, "[c]ourts should dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Hager*, 735 F.3d at 1013 (citing *Twombly*, 550 U.S. at 555).

**III.   Discussion**

Since Axiom has consented to the dismissal of all claims against Defendant Jaguande-O'Brien, the only point at issue in the Motion is whether Axiom has stated a claim against Defendant O'Brien upon which relief can be granted for a breach of guaranty under Missouri law. Plaintiff alleges that in subsection (C)(6) of Section IV of the Agreement (the "Subsection") Defendant O'Brien "guaranteed to secure the assets in the Agreement in the event of default by the Defendant auto dealerships." Doc. [4] ¶ 73. Since the Defendant auto dealerships have failed to pay the liquidated damages for which the Agreement calls in the event of an "Exclusivity Breach," and since Axiom alleges that Defendant O'Brien has guaranteed these payments to Axiom, it concludes O'Brien is in breach of the guaranty. *Id.* ¶¶ 75, 46–48.

Under Missouri law, a guaranty is "a collateral agreement for another's undertaking and is an independent contract that imposes responsibilities different from those imposed in the agreement to which it is collateral." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 434 (Mo. banc 2003); *accord Midland Prop. Partners, LLC v. Watkins*, 416 S.W.3d 805, 812 (Mo. Ct. App. 2013). As an independent contract, a guaranty requires separate consideration. *Cardinal Health 110, Inc. v. Cyrus Pharm., LLC*, 560 F.3d 894, 901 (8th Cir. 2009) (citing *Kurtz v. Fischer*, 600 S.W.2d 642, 646 (Mo. Ct. App. 1980). The Subsection—the purported guaranty—does not fit within these parameters.

The Subsection is not "independent from the contract that imposes responsibilities." *Dunn Indus.*, 112 S.W.3d at 434. The contract here is the Agreement of which the Subsection is a part. The Agreement imposes responsibilities[3] on the parties, such as Defendant O'Brien and the dealership Defendants repaying the capital advance through Axiom. *See* Doc. [4-1] at 1 ("[Defendant O'Brien and the dealership Defendants] shall make repayments via over-remit packs to [Schmitt] through [Axiom] until capital advance is paid in full."). The Subsection at issue is in Section (C) of the Agreement, entitled "Repayment of Capital Advance," and deals with how Defendant O'Brien and the dealership Defendants will repay the capital advance—in other words, satisfy their responsibilities—and what would happen in the event of a default. Because the Agreement requires Defendant O'Brien and the dealership Defendants to repay the loan through Axiom, and the Subsection at issue deals with what happens in the event of a default on the capital advance, the Subsection is not "independent from" the Agreement. And since it imposes the same responsibilities, it lacks the requisite separate consideration.

---

[3] Axiom's responsibilities under the Agreement are as follows: (1) "arrange a capital advance from [Schmitt] to [Defendant O'Brien and the dealership Defendants] for the purchase of the dealership," (2) "shall act as the processor of the payments from [Defendant O'Brien and the dealership Defendants] to [Schmitt] for the term of the capital advance," and (3) "provide and maintain record of the payments received from [Defendant O'Brien and the dealership Defendants] to [Schmitt] for the term of the capital advance." Doc. [4-1] at 1.

Moreover, nowhere does the Subsection state it is a "guaranty." *See Linnenbrink v. First Nat. Bank of Lee's Summit, Mo.*, 839 S.W.2d 618, 621 (Mo. Ct. App. 1992) (finding no guaranty and noting "[n]o form of the word 'guaranty' appears anywhere in the document"); *Ogilvie v. Ogilvie*, 487 S.W.2d 40, 41 (Mo. Ct. App. 1972) (finding no guaranty and distinguishing language at issue from cases where agreements "actually used a form of the word 'guaranty'"). Nor does it use any language indicative of a guaranty. *See Jamieson-Chippewa Inv. Co. v. McClintock*, 996 S.W.2d 84, 86, 89 (Mo. Ct. App. 1999) (Teitelman, J.) (noting word "Guarantors" next to signature line created guaranty though agreement contained no other "words of guarantee").

Given that the Subsection is not a collateral agreement, is not independent from the contract that imposes responsibilities, has no separate consideration, and makes no mention at all of a guaranty, the Court finds it too great a stretch to label it a guaranty the breach of which could support its own cause of action separate and apart from Plaintiff's breach of contract counts. *See Linnenbrink*, 839 S.W.2d at 612 ("It would require a great stretching or extension of terms to find this agreement to constitute a guaranty, and Missouri law prohibits such an indulgence." (internal quotations omitted)).

In any event, the Agreement's language is clear that even if indeed something is being guaranteed, it is the repayment of the capital advance, not the entire agreement itself. Plaintiff argues that the subsection is a "guaranty" of the "Agreement as a whole," which includes the Agreement's exclusivity obligations—which Axiom alleges Defendants have breached. Doc. [26] at 5. The Agreement's language, however, simply does not support such a reading. *See U.S. Suzuki Motor Corp. v. Johnson*, 673 S.W.2d 105, 107 (Mo. Ct. App. 1984) ("[N]o stretching or extension of terms can be indulged in order to hold the guarantor liable.").

First, as noted above, the section of the Agreement at issue is entitled "Repayment of Capital Advance."  It says nothing about other requirements contained in the Agreement.  But even more telling, the Subsection notes that "[a]ny default on the *capital advance terms above* would place a first position lien on" certain "assets."  Doc. [4-1] at 3 (emphasis added).  The exclusivity provision, however, comes *after* and *below* in a subsequent subsection.  Since "the liability of a guarantor is to be strictly construed according to the terms of the guaranty agreement and may not be extended by implication beyond the strict letter of the obligation," the Court concludes that even if the Subsection was a guaranty, it is guaranteeing only the repayment of capital advance.  *See Dunn Indus.*, 112 S.W.3d at 434.  The Complaint, though, does not allege any Defendant has defaulted or has breached the Agreement regarding repayment of the capital advance.  Therefore, even if the Subsection is a guaranty, Axiom has not alleged a breach of the guaranty, so the Court will dismiss Count IV.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, Doc. [23], is **GRANTED**.  Count IV is **DISMISSED**, and all Counts are **DISMISSED** as to Defendant Leslie Jaguande-O'Brien.

Dated this 27th day of September, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE