UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AXIOM PRODUCT ADMINISTRATION, LLC, <br>     Plaintiff, <br><br> vs. <br><br> DAN O'BRIEN, *et al.*, <br><br>     Defendants. | Case No. 4:20-cv-01333-MTS |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's, Axiom Product Administration ("Axiom"), Motion to Dismiss Defendants' counterclaims. Doc. [27]. The Motion is fully briefed and ready for adjudication. For the reasons stated herein, the Court will deny Axiom's[1] Motion.

**I.     Background**[2]

Axiom provides nationwide finance and insurance ("F&I") products tailored toward modern vehicles. Defendant Dan O'Brien owns and operates seven limited liability company car dealerships ("Dealerships"), which are also named defendants (collectively, "Defendants") in this proceeding. In July of 2017, the Dealerships each entered into a Dealer Agreement (collectively, "Dealer Agreements") with Axiom, in which the Dealerships agreed to sell Axiom's F&I products. Doc. [22] ¶ 14; *see, e.g.*, Doc. [22-1]. Once underwritten by third-party insurance companies, Defendant O'Brien then reinsures these products through a separate business entity which he owns and operates, Awesome Warranties Reinsurance Company, Ltd ("Awesome Warranties"). In the Dealer Agreements, Axiom agrees to:

---

[1] Given this is a motion to dismiss a counterclaim, Axiom is the Counter Defendant; however, for ease, the Court will refer to Axiom by name or as "Plaintiff."

[2] These facts are set forth solely for ruling on this Motion to Dismiss. They do not relieve any party of the burden of presenting evidence later in these proceedings.

1. Register, maintain, and administer each Product Agreement for each Product sold by the Dealer . . .

2. Obtain, negotiate and maintain any underwriting agreements and contractual liability Insurance policies ("CLIPs") related to Product claims necessary to ensure regulatory compliance . . .

3. Provide the Dealer with confirmation as necessary of the registration of any Customer and the respective Product purchased by Customer.

Doc. [22-1] at 1–2.

On December 13, 2019, Axiom entered into a Dealer Capital Advance Agreement ("Capital Agreement") with Defendants. Doc. [22] ¶ 17; *see, e.g.*, Doc. [22-2]. The Capital Agreement states that Axiom will arrange for a third-party lender, Glenn Schmitt, to provide Defendant O'Brien with a $3,000,000 capital advance, and Defendant O'Brien will repay the advance through Axiom. Specifically, Axiom agreed to "act as the processor of the payments from the DEALER to the LENDER for the term of the capital advance" and "provide and maintain record of the payments received from the DEALER to the LENDER of the term of the capital advance." Doc. [22-2] at 1. Defendant O'Brien agreed to repay the capital advance, with interest, through "over-remittances" included with the monthly payments made by the Dealerships to Axiom in connection with the sale of F&I products. The Capital Agreement stipulates that provisions of the Dealer Agreement "remain in full force and effect and apply in full to [the Capital] Agreement." *Id.* at 5.

As part of Axiom's duties as "administrator,"[3] Axiom was to provide Defendants monthly reports "reflecting the F&I contracts sold, the amount of money collected from [Defendant] and allocated for fees, insurance reserves and repayment of the capital advance."

---

[3] A document signed by both Axiom and Defendant, "Summary of Terms and Responsibilities for Dealer Capital Advance Amendment," reiterates that Axiom must "maintain and administer the Contract Program for Dealer and Lender" and "forward capital advance payments due to Lender upon receipt of monthly over-remittance from Dealer." Doc. [22-2].

- 2 -

Doc. [22] ¶ 24.  Defendants relied on Axiom to deliver timely and accurate reports, as those reports were the only way to ascertain payments were being made and that contracts were being ceded properly. Beginning in early 2020, Defendants allegedly began observing "discrepancies and omissions" in such reports, such as decreasing cumulative sums of premiums earned over time and stating "0" as the number of policies Axiom was obligated to administer.  Despite Defendant O'Brian "repeatedly" requesting Axiom to address these discrepancies, "Axiom failed to give any explanation."  After Defendant O'Brian engaged a third-party to assist in reconciling the discrepancies and omissions, Axiom provided "what they stated was an audited report that purportedly reflected all the contracts and funds that had been sold and then ceded to Awesome Warranties."  However, Defendant O'Brien alleges the auditing report fails to account for 1875 F&I contracts sold through the Dealerships, totaling approximately $3.5 million in premium and over-remit payments.  To date, Defendants allege Axiom has either failed or refused to explain the discrepancies in its reporting to Defendants.  According to Defendants, "complete and accurate" accounting of Axiom's records are needed to (1) identify contracts Axiom failed to cede to reinsurers and (2) identify the amount of premiums Axiom retained for itself that should have been forwarded to the reinsurers.  Without such reporting, Defendants contend it will be unable to ascertain the extent to which Axiom has failed to properly administer the F&I contracts and the funds conveyed by Defendants.

Based on those facts, Defendants brought two counterclaims against Axiom: (1) breach of contract (Count I) and (2) equitable accounting (Count II).  Doc. [22].  In the instant Motion, Axiom moves to dismiss Defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Doc. [27].

II.	Standard

The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." If the plaintiff fails to do so, Rule 12(b)(6) allows a party to move to dismiss a purported claim if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). The factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). If a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

The Court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package System, Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and must grant all reasonable inferences in favor of the nonmoving party, *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010). Although courts must accept all factual allegations as true, they are not bound to take as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677–78. Indeed, "[c]ourts should dismiss complaints based on 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Hager*, 735 F.3d at 1013 (citing *Twombly*, 550 U.S. at 555).

**III.      Discussion**

*a.      Breach of Contract*

To state a claim for a breach of contract under Missouri law, Defendants must have alleged (1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages. *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. banc 2012). Axiom argues Defendants' counterclaim "fails to state a claim because Defendants improperly allege its breach against Axiom based on obligations in contracts to which Axiom is not a party." Doc. [27] ¶ 4. But the contract provisions Defendants allege Axiom violated plainly are in contracts to which Axiom is alleged to be a party. Defendants allege, and quote, the Capital Agreement and the Dealer Agreements, both of which Defendants also attached as exhibits. *Id.* ¶¶ 14–16, 21. And both plainly say Axiom is a party to the agreements. Docs [22-1], [22-2].

Axiom takes issue the most with *facts* Defendants pleaded. *See* Doc. [28] at 2 (noting Defendants "le[ft] out . . . facts"); *id.* at 3 (noting it was "necessary to clarify the contractual relationships"); *id.* at 4 (noting "Defendants' Counterclaim omits how the process of reinsurance actually works"); *id.* at 9 (asserting Axiom "was never given an opportunity . . . to cure the alleged brief," a fact that is absent from counterclaim); *id.* at 10 (citing to and quoting from letter Axiom claims to have sent Defendants, a fact that is absent from counterclaim); *id.* at Exhibit A (providing demonstrative flow charts). There will be time for Axiom to present evidence and an explanation of its version of the facts, but it is not at this stage where the Court must take all Defendants' well-pleaded factual allegations as true. Since Defendants' facts do allege a breach, Axiom's Motion fails as to the breach of contract claim.

*b.      Equitable Accounting*

To "invoke the equitable principles necessary to seek an accounting," Defendants must have pleaded four elements: "1) the need for discovery; 2) the complicated nature of the

accounts; 3) the existence of a fiduciary or trust relationship; and 4) the inadequacy of legal remedies." *Camden Cty. v. Lake of Ozarks Council of Loc. Governments*, 282 S.W.3d 850, 861 (Mo. Ct. App. 2009) (internal quotations omitted).  Axiom argues "Defendant's Equitable Accounting claim (Count II) fails to state a claim because Defendants have failed to establish a need for Equitable Accounting under Missouri law."  Doc. [27] ¶ 5.  Once again, Axiom's arguments are fact dependent on *Axiom's* version of the facts.

For example, Axiom compares Defendants' equitable accounting claim to the plaintiff's in *Ballesteros v. Johnson*, 812 S.W.2d 217, 220 (Mo. Ct. App. 1991) where the court denied plaintiff's request for an equitable accounting.  But, there, the denial came *after* the court held an evidentiary hearing and made "Findings of Fact."  *Id.*  Then Axiom describes how there has been "a free flow of information between Axiom and Defendants" and how it has always "provided clarity to Defendants" when they sought clarification.  Doc. [28] at 11.  But these are facts at odds with what Defendants pleaded, and they are of no use to the Court at this stage.  Axiom's Motion to Dismiss the equitable accounting claim therefore also fails.[4]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff/Counter Defendant Axiom's Motion to Dismiss, Doc. [27], is **DENIED**.

Dated this 28th day of September, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[4] In its Reply in Support of the Motion to Dismiss, Axiom offers argument attacking Defendants' sufficiency of pleading other elements of equitable accounting that Axiom did not raise in its Motion or even the Memorandum in Support.  *Compare* Doc. [31] 5–7, *with* Doc. [28] 11–12.  Since Axiom did not raise them in its Motion, the Court does not address them.  *See Crawford v. Gramex Corp.*, 208 F.3d 217 (8th Cir. 2000) (per curiam) ("We decline to consider the arguments Crawford raises for the first time in his reply brief."); *CruiseCompete, LLC v. Smolinski & Assocs., Inc.*, 859 F. Supp. 2d 999, 1009 (S.D. Iowa 2012).