UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AXIOM PRODUCT ADMINISTRATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   Case No. 4:20-cv-01333-MTS ) |
| DAN O'BRIEN, *et al.*, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

On January 2, 2024, following competing Motions for Summary Judgment, the Court determined that Defendants breached the Dealer Capital Advance Agreement ("DCAA") when they contracted with a third-party—DOWC Administrative Services—for the sale of finance and insurance ("F&I") products. This breach violated the exclusivity obligation contained within the DCAA—Sections IV(G) and IV(H)—entitling Plaintiff Axiom Product Administration to damages and attorneys' and other legal fees incurred in enforcing its rights under the DCAA. *See Axiom Product Administration, Inc. v. O'Brien*, 4:20-cv-1333, 2024 WL 21467, at *11 (E.D. Mo. Jan. 2, 2024). Now, the Court must determine the appropriate measure of damages, as well as quantify the proper award of attorneys' fees and expenses. To that end, the Court held a bench trial on April 3, 2024. Counsel for both parties appeared, and the Court heard evidence. For the reasons discussed herein, the Court will award Plaintiff $921,450.00 in liquidated damages, $79,135.70 in attorneys' fees and $5,354.14 in legal expenses to Axiom for work performed by Greensfelder, Hemker, & Gale, PC ("Greensfelder"), and $874,107.70 in attorneys' fees and $46,126.76 in expenses to Axiom for work performed by GM Law.

## Findings of Fact

1. Axiom is a company that specializes in providing nationwide finance and insurance ("F&I") products tailored toward modern vehicles. Axiom contracts with automobile dealers to promote and sell Axiom's F&I products to retail consumers in tandem with an automobile purchase.

2. At the time of filing this lawsuit, Dealer was actively engaged in the retail sale and leasing of new and used automobiles.

3. The parties, along with Coffeen Management Company and Glenn Schmitt, executed the Dealer Capital Advance Agreement (the "Agreement" or "DCAA") on December 13, 2019.

4. The Agreement defines Axiom as "Company," the Defendants collectively as "Dealer," and Glenn Schmitt as "Lender."

5. Section IV(G) of the Agreement, which is titled "Exclusivity," provides:

**Exclusivity:** This provision supersedes any previous writing exclusive periods from any existing Dealer Capital Advance Agreements. In consideration of the time, effort, and expenses undertaken by LENDER in connection with this Agreement, and other good and valuable consideration, the receipt of which is hereby acknowledged, DEALER, LENDER and COMPANY agree that, beginning on December 13, 2019, and continuing until the later of: (i) December 31, 2023; or (ii) two years, 24 months following the date that the capital advance is fully repaid ("Exclusivity Period") no Borrower or Guarantor shall: (i) solicit, promote, sell, or offer any F&I Products or Services that compete with the "Warranties", "Products", "Programs", or "Contracts" offered under the Dealer Agreements (as those terms are defined in the Dealer Agreements); or (ii) enter into or participate in any discussions or negotiations with any Person or group of Persons other than COMPANY and its affiliates regarding such products or services. Borrowers and Guarantors shall, and shall cause their Affiliates and representatives to, terminate any and all existing discussions, negotiations, and agreements with any Person or group of Persons other than COMPANY regarding such products and services. For the avoidance of doubt, the parties' rights and obligations under this Section survive any full or partial prepayment of the capital advance. Notwithstanding anything in this Agreement to the contrary, DEALER is not in breach of this Section so long as 100% of the "Warranties", "Products"', "Programs", or

"Contracts" offered under the Agreement (as those terms are defined in the AGREEMENTS) issued each month by COMPANY.

6.  Section IV(H) of the Agreement, which is titled "Exclusivity Breach," provides:

If DEALER breaches its obligations under Section G ("Exclusivity"), such DEALER shall pay monthly to COMPANY an amount equal to seventy-five ($75.00) for each vehicle retailed at the following locations:

   1. Dan O'Brien Kia of Concord

   2. Dan O'Brien Kia of Portsmouth

   3. Dan O'Brien Subaru of Claremont

   4. Dan O'Brien Kia of Norwood

   5. Dan O'Brien Nissan Chelmsford

   6. Dan O'Brien Nissan Wellesley

   7. Infiniti of Hanover, MA

while an Exclusivity Breach continues during the Exclusivity Period ("Liquidated Damages"). The parties intend that the Liquidated Damages constitute compensation, and not a penalty. The parties acknowledge and agree that Lender's harm caused by an Exclusivity Breach would be impossible or very difficult to accurately estimate as of the date of this Agreement, and that the Liquidated Damages are a reasonable estimate of the anticipated or actual harm that might arise from an Exclusivity Breach. Such payment of the Liquidated Damages is DEALERS sole liability and entire obligation and LENDERS exclusive remedy for any Exclusivity Breach. DEALER is responsible for providing COMPANY with Dealer Management System report to verify production for each of the aforementioned dealerships.

7.  Section IV(I) of the Agreement, titled "Payment of Company's Expenses," provides:

DEALER will pay to COMPANY within ten (10) business days of COMPANY'S written demand for payment, any and all of COMPANY'S costs, fees, and expenses including, without limitation, attorney and other legal fees, arising under or related to the enforcement of its rights under this Agreement. This Section I is in addition to Section D of the Agreement.

8.  Dan O'Brien terminated the DCAA and all other agreements with Axiom in a

letter dated July 7, 2020.

9. Dealer began to sell some F&I products offered by DOWC, a provider other than Axiom, over the Fourth of July weekend, before Dealer had terminated the Agreement.

10. Dealer has not sold any Axiom F&I products at any of its dealerships since the termination of the Agreement in July 2020.

11. For purposes of calculating damages under the Agreement, the "breach period" is from July 4, 2020 through December 31, 2023.

12. Based on information provided from Defendants' Dealer Management System and Stone Eagle data, the number of cars Dealer retailed through F&I providers other than Axiom during the breach period, from July 4, 2020 through December 2023, is 12,286.

13. Axiom's Chief Financial Officer, Suzanne Hance, has provided an expert opinion that Axiom's lost profits damages during the brief period are estimated at $119.77 per vehicle retailed.

14. Although the parties do not agree on the appropriate measure of damages, and Defendants dispute that Axiom is entitled to the recovery of damages in the form of lost profits, Defendants do not dispute the reasonableness of Axiom's estimate of its lost profits of $119.77 per vehicle.

15. If the Court were to apply a lost profits model of expectation damages, using $119.77 per vehicle actually retailed by Dealer during the "breach period," the subtotal would be $1,471,494.22.

16. Axiom's expert, Ms. Hance, also calculated additional estimated lost profits by applying the minimum sales provision of the Agreement, Section IV(D), to the final three months' recorded sales in 2023 by Dealer. Her estimate of the additional lost profits using this

minimum sales provision is $24,672.62.

17. Together with the subtotal lost profits estimate, the final estimate by Axiom for its lost profits is $1,496,166.84.

18. The parties dispute the applicability of a lost profits measure of damages, but not the methodology or reasonableness of the calculations utilized by Axiom to estimate such lost profits.

19. Although the parties do not agree on the appropriate measure of damages, if the Court were to apply the liquidated damages provision in the Agreement, which calls for payment of $75 per vehicle retailed during the "breach period," the total amount would be $921,450.00. Defendants do not agree, however, that Axiom is entitled to payment of 100 percent (100%) of such liquidated damages.

20. Defendants entered a settlement and release agreement with Glenn Schmitt ("Lender") whereby Lender released Defendants of any and all claims he had arising out of or related to the Agreement, the terms of which are set forth in a written Settlement Agreement and Mutual Release entered into on September 30, 2020, which provides:

> Except for the executory provisions of this Agreement, Lender does hereby, and Dealer does hereby, each to the other, release, acquit, and forever discharge one another and any other related and affiliated entities and their respective agents, attorneys, representatives, successors, and assigns, from the beginning of time to the date of this Agreement, from all of those asserted, known, or unknown claims, debts, counter-claims, set-offs, causes of action, lawsuits, demands, costs, damages, expenses, loss of services, interest or the like, arising out of or related to the Capital Advance Agreement, or of whatsoever kind or nature, whether arising in law or in equity, which either had or may have had, or may hereafter have against the other, and their respective affiliated entities, agents, attorneys, representatives, successors, and assigns from the beginning of time to the date of this Agreement. Lender and Dealer do also hereby expressly agree that, although they are excused, each to the other, from further performance under the Capital Advance Agreement, the remaining rights, obligations, claims and/or defenses between Axiom and Dealer (if any) shall be unaffected by this

Agreement, except confirmation that Lender will have been paid in full upon payment by Dealer.

21. Glenn Schmitt attests in a sworn declaration, "During my settlement negotiations with Dan O'Brien and his counsel, to the best of my knowledge we never discussed or calculated any liquidated damages that might be owed to me under the DCAA. Rather, the discussions focused on repayment of principal and interest on the capital advance balance. I say this not to challenge the scope of the written settlement but to illustrate that, in my understanding, the exclusivity obligations were not for my exclusive benefit."

22. Glenn Schmitt also attests, "I never intended, through my settlement, to foreclose any right Axiom might have to enforce the DCAA against Dan O'Brien and his dealerships."

23. Axiom is not a party to any agreement obligating it to share any portion of liquidated damages it may be awarded in this action with any other person or entity.

24. Axiom's attorneys' fees claimed for this matter totaled $1,141,413.00 as of January 31, 2024. Its costs and expenses totaled $51,480.90 as of January 31, 2024. Axiom will seek its fees, costs, and expenses through the final resolution of this litigation pursuant to Section IV(I) of the DCAA. While Defendants dispute that Axiom is entitled to recover this sum for fees and costs, Defendants do not dispute that these fees and costs were incurred by Axiom for the work performed in connection with this litigation.

**Conclusions of Law**

I. **The plain language of the DCAA entitles Axiom to liquidated damages.**

The parties do not dispute that Missouri law governs the interpretation of the DCAA. However, Plaintiff argues that although the DCAA entitles it to receive liquidated damages in the event of a breach, it should instead be awarded expectation damages for its lost profits incurred as a result of the Defendants breach. Under Missouri law, "if [a] contract is clear and unambiguous, its meaning must be derived from the contract's plain language." *See MWG Enters., LLC v. ETS Wound Care, LLC*, 586 F. Supp. 3d 946, 961 (E.D. Mo. 2022). Here, the plain language of the DCAA states that if Defendants breach their obligations of exclusivity, they "shall pay monthly to COMPANY an amount equal to seventy-five ($75.00) for each vehicle retailed" at various locations and denotes the payment as "Liquidated Damages." The DCAA also clarifies that "[s]uch payment of Liquidated Damages is DEALERS sole liability and entire obligation." This Court agrees. Contrary to Plaintiff's proposed measure of damages, no provision within the DCAA contemplates the recovery of expectation damages in the form of lost profits. Therefore, by the plain language of the DCAA, Axiom is entitled to recover liquidated damages.

The parties have stipulated that the "breach period" is from July 4, 2020 through December 31, 2023, and the number of cars retailed by Defendants through F&I providers other than Axiom during this period is 12,286. Additionally, the parties do not dispute the calculations of Suzanne Hance, Axiom's expert, who found that applying the liquidated damages provision in the DCAA—calling for payment of $75.00—the amount of liquidated damages totals to $921,450.00. While Defendants do not dispute Ms. Hance's calculations, they do claim that Axiom is not entitled to recover the entire amount of liquidated damages. Instead, Defendants

argue that Axiom should receive no more than half of the liquidated damages because liquidated damages were also intended to benefit Glenn Schmitt. Defendants cite no authority for such an assertion, and no reference to such a split is made in the DCAA. As such, the Court finds that Axiom is entitled to receive $921,450.00 in liquidated damages.

    II.    **Axiom has failed to meet its burden that the full amount it seeks in attorneys' fees were incurred to enforce the contract.**

"Missouri follows the 'American Rule' which generally provides that each litigant must bear the expense of his or her attorneys' fees unless fees are authorized by statute or contractual agreement." *See Lapponese v. Carts of Colo., Inc.*, 422 S.W.3d 396, 406 (Mo. Ct. App. 2013). "Where a party's claim to attorney fees is based upon a contract the court must adhere to the terms of the contract and may not go beyond it." *Trimble v. Pracma*, 167 S.W.3d 706, 714 (Mo. banc 2005); *accord Monarch Fire Prot. Dist. of St. Louis Cnty. v. Freedom Consulting & Auditing Servs., Inc.*, 678 F. Supp. 2d 927, 939 (E.D. Mo. 2009), *aff'd*, 644 F.3d 633 (8th Cir. 2011). The plain language of the DCAA also entitles Axiom to "any and all" "costs, fees, and expenses including, without limitation, attorney and other legal fees" incurred in "enforcement of its rights under [the DCAA.]" Doc. [163] ¶ 7. Therefore, Axiom was required to prove that the fees it incurred were, in fact, fees related to enforcement of its rights under the contract.

Here, Axiom is seeking $113,051.00 in attorneys' fees and $5,354.14 in costs for work performed by Greensfelder, and also $1,028,362.00 in attorneys' fees and $46,126.76 in costs for work performed by GM law. When considering attorneys' fees, "the trial court must begin its evaluation by first determining the 'lodestar' amount by multiplying the number of hours reasonably expended by a reasonable hourly rate." *Selleck v. Keith M. Evans Ins., Inc.*, 535 S.W.3d 779, 784-85 (Mo. Ct. App. 2017); *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). As experts in evaluating

the legal services rendered, trial courts "have broad discretion in calculating the 'lodestar' amount." *Selleck*, 535 S.W.3d at 785. The Court concludes that Axiom, to an extent, has failed to prove that the attorneys' fees it incurred were related to the enforcement of the DCAA. *See Landmark Infrastructure Holding Co., LLC v. R.E.D. Invs., LLC*, 933 F.3d 906, 912 (8th Cir. 2019) (noting, in contract case applying Missouri law, that the successful party was entitled to recover attorneys' fees "only for work done in furthering the contract claim").

1. Greensfelder Fees

Greensfelder served as counsel for Axiom until May 10, 2022 when this Court granted its Motion to Withdraw. Doc. [73]. Axiom states that it has paid Greensfelder $113,051.00 in attorneys' fees and $5,354.14 in costs to Greensfelder and requests full reimbursement as these amounts were allegedly incurred in pursuing enforcement of the DCAA and relief for Defendants' breach of the DCAA. However, a cursory review of the nearly-180 pages of time entries Axiom provided for work performed by Greensfelder, and Plaintiff's own admission, confirms that some fees included were not, in fact, related to the enforcement of the DCAA. Specifically, Axiom has included two invoices from August 2021 where "J. Ferrick" and "K. Howard" charged time related to revising the DCAA, as well as reviewing a drafted Capital Advance Agreement and advising on potential changes. Doc. [169-1] at 88. Additionally, after its withdrawal as counsel, Greensfelder continued to collect "Litigation Support Charges for Data Processing, Project Management, and Hosting of Relativity Database"—specifically, Greensfelder collected $2,435.04—in relation to the transition to GM Law.

It is unquestioned that Plaintiff incurred fees related to its contract claims, but the specific amount of attorneys' fees actually devoted to enforcing rights under the contract is still unclear. Axiom bears the burden of proof related to attorneys' fees, and it is not the duty of the Court to

tirelessly review the time entries provided in support of Plaintiff's attorneys' fees to determine what amount was actually incurred in enforcing the contract claims. As such, the Court will reduce fees incurred by Plaintiff from Greensfelder by thirty percent. *See Mom365, Inc. v. Pinto*, 4:19-cv-1226-JAR, 2019 WL 6019299, at *2 (E.D. Mo. Nov. 14, 2019) (noting district courts "are authorized to apply a percentage reduction for inadequate documentation that hinders the court's ability to conduct a meaningful review"); *see also Miller v. Woodharbor Molding & Millworks, Inc.*, 174 F.3d 948, 950 (8th Cir. 1999) (per curiam) (remanding for the district court to "consider a percentage reduction for inadequate documentation"). Therefore, the Court will award $79,135.70 in attorneys' fees and $5,354.14 in costs to Plaintiff for work performed by Greensfelder.

      2. <u>GM Law Rates and Fees</u>

Next, Defendants contend that the hourly rates charged by GM Law—specifically, Mr. Helms charging $600 and $695 per hour, Mr. Mooneyham charging $375 per hour, and paralegal time at $250 per hour—are unreasonable. Doc. [169] at 14. The Court finds these rates are reasonable given the competency and qualifications of the professionals working on this case. *See Jo Ann Howard & Assoc., P.C. v. Cassity*, 4:09-cv-1252-ERW, 2020 WL 870987, at *8 (E.D. Mo. Feb. 21, 2020); *see also Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (finding district courts may rely on their own experience and knowledge of prevailing market rates in determining reasonable hourly rates). The Court also declines to further reduce any fees incurred because of block billing. *Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015) (explaining that the district court has "superior understanding of the litigation," and any "alteration of [an attorney] fee" should be left to the "sound discretion" of the court).

While the hourly rates charged are reasonable, similar to the attorneys' fees incurred by Greensfelder on behalf of Plaintiff, Plaintiff has failed to establish that the fees incurred were all related to pursuit of its contract claims. Two such examples include time spent drafting an email memorandum for a claim of tortious interference in March of 2022, and time spent drafting and revising a release of a third-party—F&I Guys. Doc. [169-3] at 12, 66. For reasons similar to the reduction of the fees incurred by Greensfelder, the Court will also reduce the fees incurred by GM Law by fifteen percent. *Mom365, Inc.*, 2019 WL 6019299, at *2; *Miller*, 174 F.3d at 950. Thus, the Court will award Plaintiff $874,107.70 in attorneys' fees and $46,126.76 in expenses for work performed by GM Law in relation to the litigation of its contract claims.[1]

## CONCLUSION

In sum, the Court awards Plaintiff $921,450.00 in liquidated damages, and $953,243.40 in attorneys' fees—$79,135.70 for work performed by Greensfelder on its behalf and $874,107.70 incurred by GM Law—as well as $51,480.90 in total expenses, for a grand total of $1,004,724.30 in attorneys' fees and expenses.

A separate Judgment will accompany this Memorandum Opinion.

Dated this 17th day of April 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[1] Defendants also contend that Axiom should not recover its alleged "substantial" and "excessive fees" in contesting discovery violations. However, the Court finds Defendants' arguments related to the intensity of litigation entirely without merit. Defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by [Plaintiff] in response." *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (1980) (en banc)).